NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 16-3908
_____


HERNAN DARIO HURTADO;
JANET GOMEZ-PARA,
                              Petitioners

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
                              Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency Nos. A098-365-240 and A098-365-241)
Immigration Judge:  Rosalind K. Malloy
_____


Argued on October 3, 2017


Before: MCKEE, AMBRO and ROTH, <u>Circuit Judges</u>

(Opinion filed: November 2, 2018)


Joseph C. Hohenstein               [ARGUED]
Landau Hess Simon & Choi
190 North Independence Mall West
Suite 602
Philadelphia, PA 19106
        *Counsel for Petitioners*

Ashley Huebner       [ARGUED]
Charles Roth
Lisa Koop
National Immigration Justice Center
208 South LaSalle Street
Suite 1300
Chicago, IL 60604
        *Counsel for Amicus-Petitioners*

Chad A. Readler, Acting Assistant Attorney General
Alison R. Drucker, Senior Litigation Counsel
Aimee J. Carmichael, Senior Litigation Counsel
Susan B. Green       [ARGUED]
Jem C. Sponzo
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, DC 20044
        *Counsel for Respondent*

————————

OPINION[*]

————————

ROTH, <u>Circuit Judge</u>

To qualify for asylum or withholding of removal under the Immigration and Nationality Act (INA), an alien must establish that he or she is a "refugee" under the Act.[1] In relevant part, such an alien must show "persecution or a well-founded fear of

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] 8 U.S.C. § 1158(b)(1)(B).

2

persecution on account of race, religion, nationality, membership in a particular social group, or political opinion."[2]

Hernan Dario Hurtado and his wife Janet Gomez Parra (Petitioners) seek relief as members of "a particular social group" subjected to persecution in Colombia. The proposed group to which they belong consists of "architect[s]/engineer[s] and project manage[rs] . . . forced to provide FARC with jobs, materials, and/or money and [who are] no longer able to meet FARC's demands."[3]

On appeal from an Immigration Judge's denial of a motion to reconsider and reopen their applications for asylum and withholding of removal, the Board of Immigration Appeals (BIA) held that Petitioners did not meet a central prerequisite for "a particular social group," namely, "social distinction." To satisfy that requirement, a proposed group must be perceived by "the people of a given society . . . as sufficiently separate or distinct."[4]

Petitioners seek review of the BIA's decision. Because the BIA did not abuse its discretion, we will deny the petition for review.

## I.    BACKGROUND

Petitioners entered the United States in 2003 as visitors authorized to remain in the country until June 2004. In April 2004, Petitioners applied for asylum and withholding of removal. Approximately four months later, they were each charged with removability

---

[2] *Id.* § 1101(a)(42)(A).
[3] App. 23.
[4] *Matter of M-E-V-G-*, 26 I. & N. Dec. 227, 241 (BIA 2014).

3

under 8 U.S.C. § 1227(a)(1)(B) and received a Notice to Appear before an Immigration Judge (IJ).

At a December 2006 hearing, Petitioners testified before an IJ in support of their applications. Petitioner Hernan Hurtado was an engineer and project manager who ran construction projects in Colombia; his wife was a fashion designer. After crossing paths with the insurgent Revolutionary Armed Forces of Colombia (FARC), Petitioners were kidnapped, robbed, and subjected to a series of extortive threats for work, money, and building materials, culminating in their decision to flee the country to escape FARC.

After the hearing, the IJ found that although Petitioners possessed "a subjective fear of persecution," they had failed to meet their burden of establishing that they were persecuted because of their membership in a particular social group.[5] On that basis, the IJ denied Petitioners' applications for asylum and withholding of removal. In August 2011, agreeing with that determination, the BIA dismissed Petitioners' appeal.

Shortly thereafter, in *Valdiviezo-Galdamez v. Attorney General*, we rejected two of the BIA's three constituent requirements for a "particular social group": "particularity" and "social visibility."[6] In relevant part, we held that the "social visibility" requirement—the precursor to the current "social distinction" requirement— had been applied inconsistently and was therefore not entitled to *Chevron* deference.[7] We reasoned that certain groups—including homosexuals in Cuba, women opposed to female genital mutilation, and former members of the El Salvador national police—had

---

[5] A.R. 722.
[6] 663 F.3d 582, 608-09 (3d Cir. 2018).
[7] *Id.* at 607.

4

been deemed to satisfy the "particular social group" requirement even though their members had defining attributes that were not outwardly perceptible or "socially visible."[8]

In March 2012, the government filed an unopposed motion to remand this case to the BIA to consider the impact of *Valdiviezo-Galdamez*, and we granted that motion.

In February 2014, the BIA responded to the concerns we articulated in *Valdiviezo-Galdamez* in a pair of decisions: *Matter of M-E-V-G-* and *Matter of W-G-R-*. The BIA clarified that the social visibility requirement did not refer to "literal" or "ocular" visibility; rather, it referred to "social distinction" and whether society perceived a group as distinct.[9] To avoid such a "misconception" in the future, the BIA renamed the social visibility requirement "social distinction."[10] The BIA added that social distinction had to be gauged from the vantage point of "the society in question, rather than by the perception of the persecutor."[11]

In November 2014, the BIA remanded this case to the IJ to consider whether Petitioners were members of a socially distinct "particular social group" in view of the BIA's intervening decisions.

In February 2015, the IJ once again denied Petitioners' applications for relief, holding that they had failed to establish that their proposed group—"Colombian architects/engineers who are extorted"—was "a distinct group recognized by Colombian

---

[8] *Id.* at 603-07.
[9] *Matter of M-E-V-G-*, 26 I. & N. Dec. at 236, 240.
[10] *Id.* at 236.
[11] *Id.* at 242.

society."[12]  Rather, the IJ found that Petitioners "were unfortunate targets of generalized crime[.]"[13]

Rather than appealing the IJ's decision, Petitioners filed a motion to reconsider and reopen their applications for asylum and withholding of removal, this time framing the proposed group as "architect[s]/engineer[s] and project manage[rs] . . . forced to provide FARC with jobs, materials, and/or money and [who are] no longer able to meet FARC's demands."[14]

On April 2, 2015, the IJ denied their motion to reconsider.  She reiterated the BIA's admonition that "[s]ocial distinction may not be determined solely by the perception of [Petitioners'] persecutors" and found that Petitioners had failed to establish that Colombian society regarded their proposed group as distinct, even as reframed.[15] She found that "[w]hile there is some evidence that engineers have been targeted for kidnapping by FARC, the country conditions evidence demonstrates that FARC has a broad scope of potential victims.  Thus, it appears that FARC targets a broader swath of the Colombian population.  Such victimhood is too broad and vague to be a particular social group since acts of violence are not limited to discrete segments of society and many are at risk."[16]

On September 16, 2016, the BIA dismissed Petitioners' appeal from that decision based solely on Petitioners' failure to show that "Colombian society recognizes [their]

---

[12] A.R. 110.
[13] *Id.*
[14] A.R. 80.
[15] App. 25.
[16] *Id.*

proposed particular social group as a distinct social group."[17]  The BIA agreed with the IJ's social distinction determination and reiterated that "a persecutor's perception alone is not enough to establish a cognizable social group."[18]

## II.     SCOPE OF REVIEW

A motion to reconsider is a request to "reexamine [a] decision in light of additional legal arguments, a change of law, or perhaps an argument or aspect of the case which was overlooked."[19]  The denial of a motion to reconsider is reviewed for abuse of discretion.[20]  "The BIA abuses its discretion when it acts in a manner that is arbitrary, irrational, or contrary to the law."[21]

Our review is limited to the BIA's final decision, except to the extent the BIA expressly adopted a portion of the IJ's reasoning.[22]  Our review is further limited to only those reasons given by the BIA to justify its decision.[23]

Because the BIA's latest decision turned solely on Petitioners' failure to satisfy the social distinction requirement, that is our focus.

---

[17] App. 7.
[18] *Id.*
[19] *In re O-S-G*, 24 I. & N. Dec. 56, 57 (BIA 2006) (quoting *Matter of Ramos*, 23 I. & N. Dec. 336, 338 (BIA 2002)).
[20] *Castro v. Att'y Gen.*, 671 F.3d 356, 365 (3d Cir. 2012) (quoting *Guo v. Ashcroft*, 386 F.3d 556, 562 (3d Cir. 2004)).
[21] *Id.* at 365.
[22] *Garcia v. Att'y Gen.*, 665 F.3d 496, 502 (3d Cir. 2011).
[23] *Id.* ("[W]e may affirm the BIA's decision only if we find that its stated reasons are correct[.]"); *see also SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) ("[I]n dealing with a determination or judgment which an administrative agency alone is authorized to make, [we] must judge the propriety of such action solely by the grounds invoked by the agency.").

### III. DISCUSSION

Petitioners raise two principal arguments on appeal. First, they contend that the BIA has failed to address the concerns we articulated in *Valdiviezo-Galdamez* and that the social distinction requirement is no different from the social visibility requirement we rejected in *Valdiviezo-Galdamez*. Second, they argue that the BIA and IJ erred by failing to consider "social distinction" from the perspective of the persecutor, in this case FARC.

In our recent decision in *S.E.R.L. v. Attorney General*, we squarely considered and rejected both of those arguments.

First, we held that the BIA had "resolve[d] any misconception" that the now-renamed social visibility requirement referred to the literal visibility of a proposed group's defining attributes.[24] For that reason, we rejected the argument that "social distinction" is functionally no different from "social visibility," as construed in *Valdiviezo-Galdamez*.[25] We also held that the social distinction requirement was capable of rational application and, for all those reasons, elected to extend the requirement *Chevron* deference.[26]

Second, we embraced the view that "social distinction" should not be considered from the perspective of a persecutor alone. Such an approach, we explained, would conflate the distinction between membership in a particular social group and persecution on account of that membership, both of which require separate showings by an

---

[24] *S.E.R.L. v. Att'y Gen.*, 894 F.3d 535, 550-51 (3d Cir. 2018).
[25] *Id.*
[26] *Id.* at 552.

8

applicant.[27]  It would also, by itself, fail to capture the perception of a given society—the relevant inquiry—because "one bad actor's twisted views should not be attributed to a whole society."[28]  For those technical and pragmatic reasons, we rejected the approach Petitioners propose.

The BIA did not act "in a manner that is arbitrary, irrational, or contrary to the law"[29] by agreeing with the IJ's determination that Petitioners had failed to meet their burden of proof as to the social distinction requirement.  The IJ considered country conditions evidence, among other record evidence, before finding that Petitioners' proposed group—"architect[s]/engineer[s] and project manage[rs] . . . forced to provide FARC with jobs, materials, and/or money and [who are] no longer able to meet FARC's demands"—was not perceived as distinct by Colombian society.[30]  Rather, the proposed group was merely a subset of a much broader and more diffuse "swath of the Colombian population" victimized by FARC.[31]

---

[27] *Id.* at 551.
[28] *Id.* at 552.
[29] *Castro*, 671 F.3d at 365.
[30] App. 25.
[31] *Id*.

Finally, Petitioners raise certain procedural concerns that are belied by the record, without merit, or both.[32]

## IV.    CONCLUSION

Because the BIA did not abuse its discretion for the reasons above, we will deny the petition for review.

_____

[32] Petitioners argue that the IJ considered an excised definition of their proposed group. Not only did the IJ and BIA consider their proposed group, as amended, on their motion to reconsider, we are not convinced the nomenclature used for each proposed group— "Colombian architects/engineers who are extorted" versus "architect[s]/engineer[s] and project manage[rs] . . . forced to provide FARC with jobs, materials, and/or money and [who are] no longer able to meet FARC's demands"—makes a difference. Petitioners also argue that the IJ erred by issuing a decision before holding a master calendar hearing. Once again, because Petitioners had ample opportunity to present evidence and have not made a sufficient showing of prejudice, we do not discern any error.